## BENEDICT v. CITY OF NEW YORK.

(District Court, S. D. New York. May 13, 1916.)

1. LIMITATION OF ACTIONS ⊕═▷103(3)—SUIT TO ENFORCE TRUST—ACCRUAL OF RIGHT OF ACTION.

A city in New York under a state statute issued improvement certificates in payment for paving, which were secured by the lien of the assessments made against abutting lots. The certificates were made receivable in payment of the assessments, and also on sales of lots for nonpayment. Under a statute subsequently enacted the treasurer sold the last of the lots for less than the assessments against them, and accepted certificates at face value in payment; the result being that a large amount in certificates was left outstanding and unsecured. A suit against the treasurer to test his right so to receive the certificates on such sales was decided in his favor by the Court of Appeals of the state. *Held* that, conceding that the city, as trustee, was bound to preserve the lien of the assessments for the protection of the certificates, it repudiated the trust when it made such sales, and that a suit against it for breach of the trust, brought in a federal court of equity 18 years afterward and 17 years after the decision of the state court, by a certificate holder, who had knowledge of the decision at the time, was barred under the state statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 508; Dec. Dig. ⊕═▷103(3).]

2. COURTS ☞375—FEDERAL COURTS OF EQUITY—FOLLOWING STATE STATUTES OF LIMITATION.

   In the absence of special equities, it is the practice of federal courts of equity to follow the local statutes of limitation.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. ☞ 375.]

In Equity. Suit by Elias C. Benedict against the City of New York. Decree for defendant.

This is a suit in equity to enforce an express trust under the following circumstances: By chapter 326 of the Laws of New York of 1874 provision was made for the improvement of certain streets and avenues in a part of Long Island City in the state of New York. Commissioners of streets, who had been appointed by chapter 765 of the Laws of 1871, were given power to grade, sewer, and pave streets within the district described. They were to estimate the cost of such work and certify it to the board of assessors of the said city, who were to assess the same as nearly as might be upon the several lots in front of which the work was to be done. After the assessors had signed the assessment roll, describing the lots and the names of the owners, the roll was to be deposited in the commissioners' office, and the assessors were to hold meetings to hear objections and correct the same. It was enacted (section 4) that after confirmation "such assessment shall be a lien upon each lot, piece or parcel of land within the section or subdistrict covered thereby to the extent of the amount assessed upon such lot." In section 5 it was provided that no warrant should be issued for the collection of the assessments, nor for the sale of any land for nonpayment of assessments, until 10 years after filing of the assessment roll, but thereafter that the lots should be advertised and sold by the city treasurer for the payment of such unpaid assessments in the same manner as sales for unpaid city taxes. Meanwhile any owner of a lot assessed could pay in his assessment and discharge his land from the lien. The grading, paving, etc., was to be done by the commissioners, who were to issue "improvement certificates" in payment to the contractors as the work progressed. These certificates were receivable at par in payment of the assessments; they were negotiable, and a record was kept of them by the commissioners. The city treasurer was likewise directed to cancel all such certificates on receiving them in payment of the assessments.

The plaintiff's position is that Long Island City, by this statute, became a trustee of the lien created by the statute against the lots in question, in trust for the certificate holders, and that, since the certificates themselves were not an indebtedness, the only rights of the certificate holders consisted in their right as beneficiaries against Long Island City as an express trustee to compel it to execute for their benefit the liens so held. They rely particularly for this position upon a part of the language of section 6, which directed the treasurer, on receiving all moneys in payment of such assessments, to keep the same separate and apart from all other money in his hands, and to pay out no part of the fund, excepting in purchase of such certificates. The act in question, as has been shown, provided that the sale should be made in accordance with sales in the city generally. By section 23 of chapter 461 of the Laws of 1871, which is the charter of Long Island City, it was provided that all sales for taxes in that city "shall be made for the shortest period for which any person will take the premises and pay the tax or assessment, interest, percentage and expenses." By chapter 501, § 10, of the Laws of 1879, it was provided that at the sale of any lot for the nonpayment of assessments it should be the duty of the officer making the sale to receive the improvement certificates in payment of the assessments, and that such certificate, when received by him, should be permanently canceled. By chapter 656, § 4, of the Laws of 1886, it was also provided that on the day named in the notice of sale of land for such assessments the treasurer should sell the lots at auction for the lowest term of years for which any purchaser would take the same and pay the aggregate amount due, and if no person should so offer to pur-

chase the property for a term of years then the treasurer should sell the fee simple of the lot to the highest bidder.

The plaintiff is the holder of large quantities of these certificates, which came into his hands by making advances to some of the contractors who did parts of the paving in question. In the year 1888, 10 years having expired since the filing of the assessment rolls, the city treasurer of Long Island City, one Bleckwenn, advertised the same for sale, and conducted a large number of sales, upon which he took, in purchase of the assessments, improvement certificates. In a large part of the sales conducted by him in that year he received bids equal to the amount of the assessments; the result being that, although the lands were cleared from the lien of the assessment, the certificates were reduced in proportion. In the years 1892 and 1893, however, when the city treasurer advertised other sales, he was in nearly all cases unsuccessful in obtaining the value of the assessment upon the lots sold. He nevertheless accepted the highest bids and took improvement certificates in payment. In this way he sold off the lands assessed, so that at the end of the sale there remained unpaid some $300,000 of improvement certificates, none of which have been paid from that time on. As all the lands assessed had been sold, these certificates have no security under any statute, and the plaintiff sues to recover for the breach of trust arising from this conduct of the city. His position is that either the city treasurer of Long Island City proceeded in contradiction of the statutes of 1874, 1879, and 1886, taken in combination, or that, if these statutes purport to allow the action of the city treasurer, they were themselves unconstitutional, in that they impaired the obligation of the contract between the city and the certificate holders.

The Court of Appeals of the State of New York, in People ex rel. Rosalie Adele Oakley v. Bleckwenn, 126 N. Y. 310, 27 N. E. 376, decided that the owner of a lot which had been sold under the act in question could compel the city treasurer to accept these improvement certificates in redemption of her lot from an assessment. This was probably a redemption from one of the sales of 1888, although the case does not distinctly so state. In the case of Nelson v. Bleckwenn, 137 N. Y. 565, 33 N. E. 338, the same court affirmed without opinion the judgment of the General Term for the Second Department relating to the same statute (19 N. Y. Supp. 993).[1] One Nelson, who, though not acting in behalf of the plaintiff herein, was acting with his knowledge, had obtained an injunction against the city treasurer from selling any of the lots under the sale of 1892 for less than the face value of the assessment and receiving in payment improvement certificates, instead of cash. The General Term reversed this injunction, holding expressly that the city treasurer might accept bids for less than the amount of the assessment, and still take the certificates in payment. The result was, therefore, that by February 10, 1893, the date on which the Court of Appeals handed down its decision in Nelson v. Bleckwenn, it was clear that the city treasurer could accept the certificates upon bids for less than the assessment. It was also clear that the city treasurer proposed to do so, because, although the plaintiff, through his agent, Warringer, appeared at the sale in 1892 and protested against the practice, the city treasurer then informed him of his purpose to continue till the end. As has been said, he did so continue, to Warringer's knowledge, till all was finished. This bill was filed on July 21, 1910, which was therefore more than 18 years after the city treasurer had taken the position of which the plaintiff now complains, and more than 17 years after it had been decided in the Court of Appeals that he was right in his construction of the statutes.

The defendant raises three points: First, that the city of New York, the successor in interest of Long Island City, is in no case the proper party defendant, since the commissioners were the agents of the state of New York, and could create no liability of the city; second, that the statutes of New York authorized the course adopted, which was legal, and that the later statutes affected only the remedy, and not the right, of the certificate holders; third, that in any event the statute of limitations has long since applied.

---

[1] Reported in full in New York Supplement: reported as a memorandum decision without opinion in 65 Hun, 621.

Stephen A. McIntire and Charles K. Allen, both of New York City, for plaintiff.

George P. Nicholson and Arthur L. Goodhart, both of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above).
[1] The Court of Appeals of the state of New York has construed the effect of the two subsequent enactments upon these certificates. It has decided that the law of 1879 gave to the county treasurer the right to accept certificates in payment of the assessments and that the law of 1886 authorized him to accept bids for less than the assessments. As a matter of statutory construction, including the Constitution of the state of New York, this is conclusive upon me, and the only question which could be open is whether the effect of those two statutes, when taken together, might not be to impair the obligation of the contract. The effect of those decisions seems to me to give a direct preference to those certificate holders who happened to present their certificates at the sales of lands, or to sell them to owners of assessed property. As I said upon the argument, the case of the other holders is precisely similar to what would be the fate of minority bondholders who did not come into a reorganization agreement, if those bondholders who did were permitted to use the face of their bonds upon the purchase price. Every one knows that the custom in those cases is to credit upon the bonds only that proportion of the amount of the purchase price which the bonds presented by the reorganization committee bears to the total issue. I think there would be a genuine question of the constitutionality of the statutes of 1879 and 1886 which gave a part of the certificate holders such a priority over the rest.

This question does not, however, seem to me to be open for consideration in this case, because the bill is clearly barred by the statute of limitations. The plaintiff's answer is that the statute of limitations never runs against the beneficiary of an express trust, unless the trustee has openly repudiated his obligations to the knowledge of the beneficiary himself. I may accept that doctrine, which happens to have been affirmed in a case very similar in subject-matter in the Supreme Court. New Orleans v. Warner, 175 U. S. 131, 20 Sup. Ct. 44, 44 L. Ed. 96. That case is not applicable, however, to the facts in the case at bar, even assuming that the defendant in the case at bar in any event could be held liable. Its obligations as trustee, according to the plaintiff's own theory, consisted in foreclosing the liens of the assessments for the benefit of the certificate holders, and keeping and distributing among them the money which was realized. The alleged breach of trust rested in what the trustee supposed was the final execution of these obligations. When the city sold all the lots and accepted the certificates in payment, it undertook, and as it supposed it successfully undertook, to wind up the whole proceeding, and if some of the certificates remained unpaid, that was supposed to be one of the misfortunes inherent in the situation. Moreover, in doing this the city, if a trustee, was guilty of no fraud, for it had the authority, not only of the statutes of the state of New York, but of a decision of the

highest court of that state, which affirmed the propriety of the course undertaken by the city treasurer.

Furthermore, as early as 1892 the city treasurer had, upon protest made by the plaintiff, openly avowed his determination to pursue that course now indicated as a' breach of trust. He had not only asserted that purpose, but had proceeded in the face of an attempted injunction from the courts, and had successfully pushed through all the courts to its conclusion his position. It is a little difficult to see what more open, definite, and final repudiation of his duties he could have made, assuming that his duty was not to accept certificates upon bids for less than the amount of the assessments.

[2] It is not necessary, I think, to consider whether a federal court of equity will feel itself absolutely bound by the state statute of limitations. Kirby v. Lake Shore, etc., Railroad, 120 U. S. 130, 138, 7 Sup. Ct. 430, 30 L. Ed. 569. There are undoubtedly certain principles by which it will feel itself guided, independently of state statutes. But where no such rules intervene, federal courts are accustomed in practice to follow the local statutes, even in cases of exclusive, and not of concurrent, jurisdiction. Clarke v. Johnston, 18 Wall. 493, 21 L. Ed. 904; Philippi v. Philippe, 115 U. S. 151, 5 Sup. Ct. 1181, 29 L. Ed. 336; Pearsall v. Smith, 149 U. S. 231, 13 Sup. Ct. 833, 37 L. Ed. 713; Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718. Clarke v. Johnston, supra, was the case of an express trust, where the trustee had closed up the estate and disposed of the property, as he supposed, 40 years before bill filed. The cause might no doubt have been disposed of upon the ground of general laches, but the court applied the statute of limitations of New York affecting suits in equity. Eighteen years is less than 40, but it is nearly twice as long as the New York Code prescribes.

Nor, if the case be looked at as involving only laches, is there any ground for a different result. The delay is unexcused, certainly after the Court of Appeals decided Nelson v. Bleckwenn, supra. If any constitutional question existed, it was time then to invoke it; nor is it an excuse that much time was lost in negotiations. If the negotiations were not to count, that should have been so understood at the outset. Nothing occurred which justified the reservation of the point for so many years.

Bill dismissed, but, under all the circumstances, without costs.