[Crim. No. 2187. In Bank.—December 31, 1918.]

## THE PEOPLE, Respondent, v. HAROLD DENMAN, Appellant.

CRIMINAL LAW—MURDER—KILLING IN PERPETRATION OF ROBBERY.—One who kills another in the perpetration of robbery is guilty of murder of the first degree by force of the provision of section 189 of the Penal Code, regardless of any question whether the killing was intentional or unintentional.

ID.—ISSUE OF INSANITY—HYPOTHETICAL QUESTIONS.—In a prosecution for the crime of murder, it is not error to overrule objections to certain hypothetical questions propounded by the district attorney to medical witnesses called by him as experts on the issue of insanity, where the objections were in substance that the questions did not contain all the material facts claimed to have been shown by defendant's witnesses, without contradiction by any of the witnesses for the prosecution.

ID.—BASIS OF HYPOTHETICAL QUESTION.—While a hypothetical question must be based upon facts claimed to be shown by evidence in the case, it is not essential that it embrace all the evidence in the case upon the subject of inquiry, but it may be addressed to any reasonable theory which may be taken by counsel, who has the right to frame a question to accord with his theory of what the material facts are as shown by that evidence, and in so doing may omit facts, which, from his point of view, have no material bearing upon the subject under inquiry.

CLXXIX Cal.—32

ID.—COMMISSION OF CRIME BY UNITED STATES SOLDIER—EXISTENCE OF
STATE OF WAR—JURISDICTION.—The state courts have jurisdiction
concurrent with the military tribunals of the United States to try
a private soldier in the army of the United States, regularly enlisted
and mustered into service, and subject to the articles of war and the
provisions of the United States statutes with respect to the jurisdic-
tion of courts-martial, for the crime of murder, where such homicide
was not committed in the performance of any military duty, or in
any place under the exclusive jurisdiction of the United States, not-
withstanding at the time of the commission of the offense a state of
war existed between the United States and foreign nations.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.
Gavin W. Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

Earl Rogers, Paul W. Schenck, Charles Williams, V. J.
Cobb and Frank Dominguez, for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn,
Deputy Attorney-General, and Jerry H. Powell, Deputy
Attorney-General, for Respondent.

ANGELLOTTI, C. J.—The defendant was convicted in the
superior court of Los Angeles County of the crime of murder
in the first degree, and adjudged to suffer death. He appeals
from the judgment.

No claim is made that the evidence was in any way insuffi-
cient to support the verdict. The deceased was shot to death
by the defendant on a public street in the city of Los Angeles.
The theory of the prosecution, amply sustained by the evi-
dence, was that the killing was done in the perpetration of a
robbery of the deceased by defendant and two companions.
The defense was insanity. The defendant was most ably de-
fended, and apparently was accorded every substantial right.
The suggestions of error in the proceedings are very few, con-
sidering the length of the trial, and we find nothing of sub-
stance in any of them.

We regard it as settled law in this jurisdiction that one who
kills another in the perpetration or attempt to perpetrate
arson, rape, robbery, burglary, or mayhem, is guilty of

murder of the first degree by force of the provision of section 189 of the Penal Code, altogether regardless of any question whether the killing was intentional or unintentional. As said in one of the cases: "Nor is it of the slightest consequence that the conspirators may not have intended to bring about their victim's death. The killing, having occurred in the perpetration of robbery, was murder in the first degree. (Pen. Code, sec. 189.)" (*People* v. *Raber*, 168 Cal. 318, [143 Pac. 318]; *People* v. *Milton*, 145 Cal. 169, [78 Pac. 549]; *People* v. *Witt*, 170 Cal. 108, [148 Pac. 928].) We see no reason to doubt the correctness of the views expressed in the cases cited. Appellant's claim of error in the instructions in this behalf must be held to be unfounded.

Objection was made to certain hypothetical questions propounded by the district attorney to medical witnesses called by him as experts on the issue of insanity, the objection being in substance that the questions did not contain all the material facts claimed to have been shown by defendant's witnesses, without contradiction by any of the witnesses for the prosecution. The objection is based upon the fact that there was some evidence given by witnesses for defendant which, it is claimed, tended to show a hereditary predisposition to insanity, certain head injuries to the defendant in his early youth, which resulted in a disordered mind, and the inordinate use, by smoking, of a Mexican weed known as marihuana. the constant use of which for a more or less extended period of time was calculated, according to testimony given by witnesses for the defendant, to produce insanity; that this testimony was not contradicted by any witness for the prosecution, and that the district attorney in his hypothetical questions to his expert witnesses failed to refer to any of these elements. It is not claimed that any of the facts stated in the hypothetical questions of the district attorney was without support in the evidence. The district attorney elected to confine his hypothetical questions to evidence as to the acts, course of conduct, and statements of the defendant from a date shortly prior to the alleged crime, including, of course, the facts, as claimed by him to have been shown, as to the preparation for the robbery and the killing in the perpetration thereof, and the subsequent conduct and statements of the defendant. His theory, whether correct or not, doubtless was that in view of the evidence as to the facts stated in his

questions, the evidence as to other matters relied upon by counsel for defendant had no substantial importance in the matter of the determination of the issue of insanity. In view of the well-settled law in this jurisdiction it cannot be held that the trial court erred in overruling the objections to these questions. It is thoroughly settled here that while a hypothetical question must be based upon facts claimed to be shown by evidence in the case, it is not essential that it embrace all the evidence in the case upon the subject of inquiry, that it may be addressed to any reasonable theory which may be taken by counsel, and that counsel has the right to frame a question to accord with his theory of what the material facts are as shown by that evidence, and in so doing may omit facts which, from his point of view, have no material bearing upon the subject under inquiry. (See *People* v. *Durrant,* 116 Cal. 216, [48 Pac. 75] ; *People* v. *Hill,* 116 Cal. 566, [48 Pac. 711] ; *Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 716, [103 Pac. 190] ; see, also, Lawson on Expert and Opinion Evidence, 2d ed., pp. 166 and 167; 2 Jones' Commentaries on the Law of Evidence, sec. 371; *Burt* v. *State,* 38 Tex. Cr. Rep. 445, [39 L. R. A. 305, 40 S. W. 1000, 43 S. W. 344].) Counsel for defendant had the right on cross-examination to question these expert witnesses fully as to the effect of such additional facts as he deemed shown by evidence and material to the issue, and the record shows that he was fully accorded this right. There is no basis whatever for any claim of prejudicial error in the matter of rulings on hypothetical questions.

Examination of the record has failed to indicate to us that there was any prejudicial misconduct on the part of the district attorney during the trial of this cause.

We see no force in the claim that the trial court erred in denying defendant's motion for a new trial. As to the matters complained of, in so far as we regard them as important, the evidence afforded by the affidavits presented on the motion was conflicting, and the decision of the trial court thereon is conclusive on us. We see no reason to doubt the correctness of that conclusion.

The main contention on this appeal is that the superior court was without jurisdiction to try the defendant. This claim, made for the first time on this appeal, is based upon certain facts disclosed by the evidence as to which there is no dispute. At the time of the commission of the homicide a

state of war existed between the United States and the governments of Germany and Austria-Hungary, and the offense of defendant was, therefore, one committed in time of war. The defendant was at the time of such offense a private soldier in the army of the United States, regularly enlisted and mustered into service, and subject to the articles of war and the provisions of the United States statutes with respect to the jurisdiction of courts-martial. The evidence shows further that at the time of the homicide he had been absent from his station, Camp Kearny, for several days. He was not engaged during this time in the performance of any military duty. The day after the homicide he was arrested in the city of Los Angeles by the civil authorities, and has ever since been in the custody of the state. No demand for his custody has ever been made by the military authorities, or any claim urged by them or on their behalf that the state courts are without jurisdiction to proceed in his case. The defendant alone makes this claim. It does not appear that any court-martial proceeding has ever been initiated against him. The claim is that under the articles of war the offense of defendant, although a crime under the law of this state, was cognizable only by a court-martial, and that the courts of the state were entirely without jurisdiction to try him therefor, or to adjudge punishment in the event of his conviction. This claim is based solely on the fact that defendant was at the time of the offense a member of the army of the United States, and that the offense was committed in time of war. Admittedly the offense was not committed in the performance of any military duty, or in any place under the exclusive jurisdiction of the United States.

The right of Congress to provide for exclusive jurisdiction in courts-martial and other military tribunals as to persons in the military service of the United States for offenses of any kind committed in time of war may be freely conceded. It is not disputed by the attorney-general in this case. But it is claimed on behalf of the state that while Congress has invested courts-martial with jurisdiction to try and adjudge to punishment any person subject to military law who commits murder or rape in time of war within the geographical limits of the states of the Union and the District of Columbia, it has not deprived, or attempted to deprive, the civil courts of the state of jurisdiction in such cases; has not made the jurisdic-

tion of the military tribunals exclusive of that of the state courts.

That this was true prior to the revisions of the articles of war in 1913 and 1916 is amply evidenced by the decisions of both federal and state courts, there being practically no conflict of authority on the proposition. It was almost universally understood and declared by the courts wherever the question was raised that the design of those provisions of the articles of war which confer jurisdiction on courts-martial to try and adjudge to punishment persons in military service for such offenses as murder, rape, etc., committed in time of war, was simply to confer a jurisdiction concurrent with that of the state courts under the laws of the state, it being deemed essential to the enforcement of discipline and the protection of citizens that such offenses should be cognizable by a military court. Especially was this true in view of the fact that the efficiency of the service in time of war made it essential that the military authorities should not be *required* to deliver to the civil authorities soldiers charged with offenses under the laws of a state, and the articles of war have always so in effect provided. But there was no intent to thereby oust the courts of a state of jurisdiction of any person committing an offense under the laws of the state. As was substantially said in *People* v. *Gardiner*, 6 Park. Cr. Rep. (N. Y.) 143, an intention to exclude the jurisdiction of the state courts in such cases should not be inferred except upon the most clear and explicit language.

While, by reason of the right of the military authorities in time of war to retain the custody of one in military service charged with an offense under the laws of a state, and the possible right of such authorities to take such a person from the custody of the civil authorities (see *Ex parte King,* 246 Fed. 868), the state courts might be practically without power to proceed with the trial or punishment of the offender where the prior right was being asserted by the military authorities, the jurisdiction of such courts still existed. There was nothing in the articles of war to prevent the military authorities from delivering the alleged offender to the civil authorities if they saw fit to do so, or from refusing to assert any claim to his custody when held by the state authorities if they so desired. Having his actual custody without any claim therefor on the part of the military authorities, the state could pro-

ceed, through its tribunals, with his trial and punishment, if
adjudged guilty, in the same way and to the same extent as
in the case of any other offender against its laws.   The cor-
rectness of the views expressed by the United States supreme
court in 1878 on this subject, in *Coleman* v. *Tennessee,* 97
U. S. 509, [24 L. Ed. 1118, see, also, Rose's U. S. Notes],
which may fairly be said to be the leading case thereon, has
never been questioned by any later decision of that august
tribunal.   As late as 1909 that court, in *Franklin* v. *United
States,* 216 U. S. 559, [54 L. Ed. 615, 30 Sup. Ct. Rep. 434,
see, also, Rose's U. S. Notes], referred to this case as holding
that the articles of war did not confer upon courts-martial
exclusive jurisdiction for the trial of a soldier for murder
committed in time of war, and declared that undoubtedly the
general rule is that the jurisdiction of civil courts is con-
current as to the offenses triable before courts-martial.   (See,
also, *People* v. *Gardiner, supra.*)

We cannot see that any change in this well-settled doctrine
has been effected by the revisions of the articles of war in the
years 1913 and 1916.   Prior to the revisions the article con-
ferring jurisdiction on courts-martial for murder, etc., com-
mitted in time of war and declaring the punishment, was
article LVIII, which provided that "in time of war, . . .
larceny, robbery, . . . murder," etc., "shall be punishable
by sentence of a general court-martial when committed by
persons in the military service of the United States, and the
punishment in any such case shall not be less than the punish-
ment for the like offense by the laws of the state, territory, or
district in which such an offense may have been committed."
It was this article and prior provisions substantially the same
that were involved in the decisions to which we have referred.
Prior to the revision there was no other article relative to the
jurisdiction of courts-martial as to the offenses specified.   The
article conferred the jurisdiction and declared the punish-
ment.   When it came to the revisions, the offenses of murder
and rape were dealt with in article XCII, and other crimes
theretofore specified in the old article LVIII were dealt with
in article XCIII.   In the revision, article XCII is as follows:
"Any person subject to military law who commits murder or
rape shall suffer death or imprisonment for life, as a court-
martial may direct; but no person shall be tried by court-
martial for murder or rape committed within the geographical

limits of the States of the Union and the District of Columbia in time of peace.'' Article XCIII simply provides that as to the crimes specified therein ''any person subject to military law . . . shall be punished as a court-martial may direct.'' Appellant's contention that by the revisions exclusive jurisdiction was given to courts-martial is based entirely on the change in phraseology from ''shall be punishable'' in old article LVIII to ''shall suffer death or imprisonment for life, as a court-martial may direct'' in article XCII, and to ''shall be punished as a court-martial may direct'' in article XCIII. in view of certain language of Mr. Justice Field in *Coleman* v. *Tennessee, supra,* when, in holding that the jurisdiction given courts-martial by article LVIII was not exclusive, he pointed out *among other reasons for his conclusion,* that the article ''simply declares that the offenses shall be 'punishable,' *not that they shall be punished by the military courts,*'' saying further that this was merely saying that they may be thus punished. This was only one of the considerations suggested by the learned justice for his conclusion that no clear intent on the part of Congress to confer exclusive jurisdiction on courts-martial in such cases was shown by the articles of war. We think that even in the entire absence of other considerations it would be going far beyond any justifiable limit to conclude that by this mere change of phraseology in a revision of the articles more than thirty years after *Coleman* v. *Tennessee* was decided, any such radical change was designed. But, in view of other changes made by the revisions, we are satisfied that no change from the well-settled rule in the matter of jurisdiction was designed. Under the revisions, articles XCII and XCIII,. like the many other articles defining and specifying offenses and prescribing penalties, are no longer the articles *conferring* jurisdiction. The matter of jurisdiction is specially covered by articles XII to XVI, under the heading ''jurisdiction,'' by which the jurisdiction of the various kinds of courts-martial is specified. Article XII declares that ''general courts-martial shall have power to try any person subject to military law for any crime or offense made punishable by these articles,'' etc. Under the scheme of the revision the office of such articles as XCII and XCIII is simply to declare the crimes and offenses punishable by the articles, and to make such provision as was deemed proper for the punishment to be imposed *by the court-martial.* That article XCII

contains an express provision that as to murder and rape committed in time of peace within a state or the District of Columbia, no person shall be tried by court-martial, does not affect our conclusion as to this. This being the situation, there was no particular significance in the change made in phraseology on which so much reliance is based. Naturally, we look to the articles conferring jurisdiction to ascertain any intent on the part of Congress to make the jurisdiction of courts-martial thereby conferred exclusive, and, certainly, no such intent is to be found in those articles, or, in our judgment, in any part of the articles of war, when the same is considered in connection with the other parts.

We see no force whatever in the claim that article XV, to the effect that the provisions of the articles conferring jurisdiction upon courts-martial shall not be construed "as depriving military commissions, provost courts or other military tribunals of concurrent jurisdiction in respect of offenders or offenses that by the law of war may be lawfully triable by" such tribunals, shows an intent to exclude the jurisdiction of *civil* tribunals. This provision was manifestly designed to make it clear that even as to other military tribunals the jurisdiction of courts-martial was not to be considered exclusive with relation to offenders or offenses that by the law of war might lawfully be tried by such other tribunals. It had no relation whatever to the matter of jurisdiction of the civil courts.

Of course, if the jurisdiction of the courts of the state in such a case as this has not been taken away by Congress, the fact that a concurrent jurisdiction exists as to courts-martial or other military tribunals, or that the military authorities could, if they so desired, take the accused from the custody of the state, is immaterial here. As was said by the supreme court of the United States in *Ex parte Mason,* 105 U. S. 696, [26 L. Ed. 1213, see, also, Rose's U. S. Notes], concerning a claim somewhat similar in principle, "choice of the tribunal by which he is to be tried has not been given to the offender. He has offended both against the civil and the military law." Conceding the paramount right of the military authorities in time of war to the custody of any person in the military service of the United States, notwithstanding criminal charges against him in the courts of a state, the right is solely that of the military authorities, to be enforced as the best interests of

the military service may seem to them to require. In the absence of some showing of a claim by such authorities, no question of want of jurisdiction can arise.

Decisions to the effect that the jurisdiction of the courts of the United States as to offenses committed within the territorial limits of a state, but upon land over which the state has ceded jurisdiction to the United States, is exclusive of the courts of the state, are not in point. The statute applicable in those cases expressly so provided. (See *Battle* v. *United States,* 209 U. S. 36, [52 L. Ed. 670, 28 Sup. Ct. Rep. 422, see, also, Rose's U. S. Notes].)

Likewise, decisions in cases where the act complained of in the prosecution in the state court was done by one in the proper discharge of his duty as a soldier of the United States, or in pursuance of any law of the United States, are not in point here. In such a case the courts of a state are without power to adjudge punishment. And where the facts entitling the accused to exemption from state control are undisputed, the accused will be discharged on *habeas corpus* in advance of his trial. Such was held to be the situation in *In re Neagle,* 135 U. S. 1, [34 L. Ed. 55, 10 Sup. Ct. Rep. 653, see, also, Rose's U. S. Notes], and the decision was based on this condition. This, likewise, was the real basis of the decision in *In re Wulzen,* 235 Fed. 262, [Ann. Cas. 1917A, 274], relied on by appellant. (See, generally, on this subject, *United States* v. *Lewis,* 129 Fed. 823.) Necessarily these cases and the principle therein upheld have no application to the question before us.

We are of the opinion that the claim of appellant that the superior court of Los Angeles County was without lawful jurisdiction in this matter is not well based.

This disposes of all points made for reversal.

The judgment and order denying a new trial are affirmed.

Victor E. Shaw, J., *pro tem.,* Sloss, J., Wilbur, J., Richards, J., *pro tem.,* Melvin, J., and Lorigan, J., concurred.