[Crim. No. 2598.   In Bank.—April· 29, 1924.]

THE PEOPLE, Respondent, v. CLARENCE REID, Appellant.

[1] CRIMINAL LAW — MURDER — LETTERS WRITTEN BY DEFENDANT TO FELLOW-PRISONER—CONSCIOUSNESS OF GUILT—ADMISSION OF LETTERS—EVIDENCE.—In a prosecution for murder, letters written by the defendant to a fellow-servant and which came into the possession of the jailer, offered by the prosecution to show consciousness of guilt on the part of defendant, were admissible where the context of the letters showed that they were written and delivered to the fellow-prisoner after the commission of the homicide in question for which the defendant was being tried; and the fact that the prosecution did not call upon the fellow-prisoner to testify in order to fix definitely the date of the writing and receipt of the letters did not render the letters inadmissible, whatever objection might have been made on this score going only to the weight of the evidence as to whether or not the defendant had in fact written the letters to the fellow-prisoner after the commission of the homicide.

[2] ID.—PENALTY FOR MURDER IN FIRST DEGREE—DISCRETION OF JURY —PROPER REFUSAL OF REQUESTED INSTRUCTION.—A requested instruction which, had it been given to the jury, would, in effect, have charged the jury that their discretion in determining the penalty to be imposed upon a verdict of murder in the first degree was an arbitrary discretion, was properly refused.

[3] ID. — JURIES AND JURORS — DISCRETION — INSTRUCTION. — In such prosecution, a given instruction that "If the jury in this case should find the defendant guilty of murder in the first degree and they also shall find the further fact that there is some extenuating fact or circumstance in the case, it is within their discretion to pronounce such a sentence as will relieve the defendant from the extreme penalty of the law. The jury in a criminal case for murder is vested with a discretion but the discretion is not an arbitrary one, and is limited to determining which of two punishments shall be inflicted, and is to be employed only when the jury is satisfied that the lighter penalty should be imposed. If the evidence shows the defendant to be guilty of murder in the first degree but does not show some extenuating fact or circumstances, it is the duty of the jury to find a simple verdict of murder in the first degree, and leave with the law the responsibility of affixing the punishment," was proper.

[4] ID.—VERDICT—EVIDENCE.—In such a prosecution, the evidence was sufficient to warrant a verdict of murder in the first degree carrying the death penalty.

[5] ID.—MORPHINE ADDICT—INSANITY.—The fact that the defendant was a morphine addict at the time of the killing is not conclusive evidence that he was at that time insane.

[6] ID.—INSANITY—BURDEN OF PROOF.—Where the defense of insanity is interposed the burden is upon the defendant to support that defense by showing that he was at the time of the commission of the crime so mentally deranged that he was not conscious of the wrongful nature of the act with which he was charged and did not know that it was criminal.

[7] ID.—COMMISSION OF FELONY—INTENT.—Where the killing is done in the perpetration or attempt to perpetrate certain felonies, including that of robbery, the act itself is *prima facie* evidence of premeditation and the crime is made murder in the first degree regardless of whether or not the defendant had the intent in the first instance or at the time of the shooting to kill; in short, whenever one in doing an act with the design of committing a felony takes the life of another, this is murder. The law in such a case superadds the intent to kill to the original intent to commit the felony.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. M. Torchia and Charles Matthews for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and J. L. Flynn for Respondent.

LENNON, J.—Defendant was accused in an information filed in the superior court of the county of Los Angeles with the crime of murder and upon the trial the jury found him guilty of murder in the first degree and fixed the penalty at death. From that judgment defendant appeals.

The murder occurred in the rear end of a trunk store, located at 419 South Spring Street, in the city of Los Angeles, at about 6 o'clock P. M. on January 21, 1923. There were present in the store at the time six persons, Munson, Safady, Mason, Ingham, Charles Weingarten, the

---

5. Effect of criminal responsibility of persons addicted to use of morphine, note, 39 L. R. A. 262.

6. Weakness of mind as affecting responsibility for homicide, notes, 76 Am. St. Rep. 83; 10 L. R. A. (N. S.) 999.

deceased, and David Weingarten, brother of the deceased and proprietor of the business. The defendant, accompanied by one Lawrence McMullen, entered said place of business through the front door, which was slightly ajar. As they entered the store they were met by David Weingarten, who thought they had come on business. Both the defendant and his companion were carrying guns. The defendant commanded David Weingarten to "stick 'em up" and forced him to walk back to the rear of the store where the safe was located. Charles Weingarten seized the defendant's arm and held it up. While in that position the gun in the defendant's hand went off, the bullets striking the ceiling. With his other hand the defendant reached into his pocket, procured another gun and fired straight at the deceased, killing him. The shuffling and the shooting all occurred in the space of a few seconds. After the shooting the defendant and his companion fled from the store. Jumping on the running-board of a moving automobile the defendant succeeded in making his escape. In his flight the defendant had dropped the hat he was wearing in the store. Meeting the former owner of the hat that evening about 7 o'clock and knowing that the initials of the former owner were in the hat he told the owner that he had "bumped off" a man and for the owner of the hat to "watch out." At the trial the defendant was positively identified by an eye-witness to the shooting as one of the persons who had participated in the attempted robbery and his companion was identified as a workman in an electrical shop just across the alley from the trunk factory where the deceased was shot.

The defendant upon the trial of the case did not deny the killing, but interposed the defense of insanity. He relies for a reversal upon three grounds,—(1) the alleged improper admission in evidence of certain letters claimed to have been written by the defendant, (2) the improper giving of a certain instruction to the jury by the trial court and the refusal of the trial court to give a certain instruction requested by the defendant, and (3) the insufficiency of the evidence to warrant a. verdict of murder in the first degree carrying the death penalty.

[1] At the trial of the case certain letters, claimed by the prosecution to have been written to a fellow prisoner,

Herbert Wilson, by the defendant after his arrest and during his incarceration in the county jail, were introduced in evidence. For the purpose of laying a foundation for the introduction in evidence of these letters two undisputed exemplars of the handwriting of the defendant were introduced in evidence. A handwriting expert was then called to the stand who testified that the letters sought to be introduced in evidence had been written by the same person who had written the exemplars. The jailer of the county jail where the defendant was incarcerated then testified that he had received the letters in question, from time to time, from one Herbert Wilson, a prisoner in the county jail. This witness testified that he had received the letters during the time the defendant Reid was incarcerated in the county jail and that he had received the last of these letters but a few days before the trial. The letters were introduced in evidence by the prosecution for the purpose of showing consciousness of guilt on the part of the defendant. In behalf of the defendant it is argued that the evidence adduced by the prosecution does not positively show that the letters were written while Reid was in jail upon the charge of murder and that the letters could be material only if they had been written after the commission of the murder. In this behalf it is contended that the letters themselves are not dated and that inasmuch as the defendant had been convicted in October, 1922, of the crime of robbery, the letters may have been written during the period of time he was incarcerated for that offense. This argument is negatived by the context of the letters, which points with almost unerring certainty to the fact that they were written and delivered to Wilson after the homicide for which the defendant was being tried had been committed. Throughout the series of letters are to be found declarations of the defendant susceptible of no other reasonable construction than that they referred to the fact that the defendant was implicated in the killing of the deceased. Thus, (1) "Herb, I know I will hang if I go to trial but I will not reach there if I got ½ a chance . . . "; (2) "I might plead guilty if I get a guarantee of life"; (3) "I am facing the rope now," and (4) "They have got 7 eyewitnesses against me." In short, the letters speak for themselves.

It was not necessarily incumbent upon the prosecution
to call to the stand Herbert Wilson, the fellow-prisoner of
the defendant, and the person from whom the jailer had
procured the letters, in order to more definitely fix the time
of the writing of the letters. True, as is contended, the
prosecution if it had called the prisoner Wilson might have
been able to have fixed definitely the date of the writing
and the receipt of the letters. But the fact that the prose-
cution did not see fit to do so did not thereby render the
letters inadmissible in evidence. Whatever objection might
have been made upon this score could only have gone to
the weight of the evidence as to whether or not the de-
fendant had in fact written the letters to Wilson after the
commission of the homicide. The objection that more satis-
factory evidence might have been offered through the
medium of the testimony of Wilson as to the date of the
letters goes only to the weight of the letters as evidence.
Of course, the defense would have been entitled to an instruc-
tion to the jury, and doubtless one would have been given
had it been requested, to the effect that in weighing this
evidence the jury should be guided by the provisions of
section 2061 of the Code of Civil Procedure, which provides
that "if weaker and less satisfactory evidence is offered
when it appears that stronger and more satisfactory was
within the power of the party, the evidence offered should
be viewed with distrust."

[2] The trial court did not err in refusing the requested
instruction of the defendant dealing with the discretion of
the jury in fixing the penalty of murder in the first degree,
which was as follows: "In determining the question whether
or not the defendant, Clarence Reid, shall suffer death or
confinement in the state prison for life you must exercise
your own discretion and with this power of discretion the
court cannot interfere. You are left entirely free to act ac-
cording to your own judgment." The requested instruc-
tion, had it been given to the jury, would, in effect, have
charged the jury that their discretion in determining the
penalty to be imposed upon a verdict of murder in the first
degree was an arbitrary discretion. That this is not the
law in California is thoroughly settled by a number of de-
cisions, including the recent decisions of *People* v. *Wolf-*

*gang,* 192 Cal. 754 [221 Pac. 907], and *People* v. *Rogers,* 163 Cal. 476, 484 [126 Pac. 143].

[3] Neither did the trial court err in its instruction to the jury on the same subject. That instruction is as follows: "If the jury in this case should find the defendant guilty of murder in the first degree and they also shall find the further fact that there is some extenuating fact or circumstance in the case, it is within their discretion to pronounce such a sentence as will relieve the defendant from the extreme penalty of the law. The jury in a criminal case for murder is vested with a discretion but the discretion is not an arbitrary one, and is limited to determining which of two punishments shall be inflicted, and is to be employed only when the jury is satisfied that the lighter penalty should be imposed. If the evidence shows the defendant to be guilty of murder in the first degree but does not show some extenuating fact or circumstances, it is the duty of the jury to find a simple verdict of murder in the first degree, and leave with the law the responsibility of affixing the punishment." In the case of *People* v. *Wolfgang,* 192 Cal. 754 [221 Pac. 907], substantially the same instruction was given by the court and there held to be a correct exposition of the law.

[4] We have given careful consideration to the contention that the evidence is insufficient to warrant a verdict of murder in the first degree carrying the death penalty. A review of the evidence upon that phase of the case which appertains to the mental condition of the defendant satisfies us that the evidence is sufficient to support the verdict rendered. [5] The fact that the defendant was a morphine addict at the time of the killing is not conclusive evidence that he was at that time insane. [6] Where the defense of insanity is interposed the burden is upon the defendant to support that defense by showing that he was at the time of the commission of the crime so mentally deranged that he was not conscious of the wrongful nature of the act with which he was charged and did not know that it was criminal. (*People* v. *Bundy,* 168 Cal. 777 [145 Pac. 537].) [7] Where the killing is done in the perpetration or attempt to perpetrate certain felonies, including that of robbery, the act itself is *prima facie* evidence of premeditation and the crime is made murder in the first degree re-

gardless of whether or not the defendant had the intent in the first instance or at the time of the shooting to kill. (Pen. Code, sec. 189; *People* v. *Manriquez,* 188 Cal. 602 [20 A. L. R. 1441, 206 Pac. 63]; *People* v. *Denman,* 179 Cal. 497 [177 Pac. 461]; *People* v. *Hadley,* 175 Cal. 118 [165 Pac. 442]; *People* v. *Witt,* 170 Cal. 104 [148 Pac. 928]; *People* v. *Raber,* 168 Cal. 316 [143 Pac. 317]; *People* v. *Bostic,* 167 Cal. 754 [141 Pac. 380]; *People* v. *Milton,* 145 Cal. 169 [78 Pac. 549].) In short, whenever one in doing an act with the design of committing a felony takes the life of another, this is murder. The law in such a case super-adds the intent to kill to the original intent to commit the felony. (*People* v. *Olsen,* 80 Cal. 122 [22 Pac. 125]; *People* v. *Doyell,* 48 Cal. 85, 94.) The question therefore before the jury, in view of the defense interposed, was whether or not the defendant at the time of the commission of the crime of robbery was so mentally deranged as not to know that the act of robbing the store was wrongful and criminal. The sum and substance of the testimony of Dr. Bowers and Dr. Parkin, medical experts introduced in behalf of the defendant, was that the defendant was mentally below par. The testimony of the doctors as to what would be the condition of a morphine addict who had run out of morphine and given himself a shot of three grains of cocaine is based solely upon the testimony of the defendant that this is what had occurred. The testimony of the defendant was impeached generally by proof of his former conviction of a felony and it may well have been that the jury did not believe his testimony concerning his use of narcotics and their effect upon him on the day of the killing. It is also to be noted that when Dr. Parkin was asked a hypothetical question setting forth the facts of the robbery in detail and including the fact of the taking of the cocaine by the defendant as to whether or not, in his opinion, the defendant knew at the time of the robbery what he was doing, the doctor's answer was that he did know.

Opposed to the testimony in behalf of the defendant concerning the question of whether or not he was conscious of the nature of the act he was committing is the testimony of the eye-witnesses to the killing, who testified to the acts and conduct of the defendant at the time of the robbery.

This testimony clearly shows that the defendant at that time had reasoning capacity and was aware of the nature of the act he was committing. In addition to all this there is the admitted flight of the defendant from the scene of the crime, coupled with the further fact that later in the evening when the defendant met the former owner of the hat which he, the defendant, had dropped in the store at the time of the robbery he told the former owner of the hat to "watch out" as he, the defendant, had "bumped off" a man. The jury, with this evidence before it, doubtless came to the conclusion, and correctly, in our opinion, that the defendant at the time of the commission of the crime was not so mentally deranged as to come within the protection of the law upon the ground of insanity. Finally, it may be said, as is indicated by our discussion of the facts of the case, that upon the question as to the mental condition of the defendant at the time of the killing, there was a substantial conflict in the evidence. The verdict will not be disturbed.

The judgment is affirmed.

Lawlor, J., Seawell, J., Waste, J., Richards, J., and Myers, C. J., concurred.