[Crim. No. 1974. First Appellate District, Division One.—February 15, 1939.]

THE PEOPLE, Respondent, v. C. CABALTERO et al., Appellants.

D. C. Kirby, Chester Damico, Jr., Louis J. Pasquinelli and James J. Scoppettone for Appellants.

U. S. Webb, Attorney-General, F. Walter French and William F. Cleary, Deputies Attorney-General, for Respondent.

KNIGHT, J.—The defendants, C. Cabaltero, Benny Flores, Marcella Avelino, Domingo Velasco, Delmacio Dasalla, and Fred Avelino, were accused jointly by an information containing two counts with having committed first degree robbery and first degree murder, it being alleged in the first count that armed with pistols they robbed one J. Nishida of about $1300, and in the second count that while perpetrating said robbery they killed and murdered one Pedro Ancheta. They were tried together and all except Fred Avelino were found guilty of both crimes, the jury having fixed the punishment for the latter crime at life imprisonment. Fred Avelino was found guilty of first degree robbery, but acquitted on the charge of murder. Motions for new trial were denied,

and following the pronouncement of judgment on said convictions each defendant appealed.

There has been an abandonment, however, of the appeals from the robbery convictions. No brief has been filed in behalf of Fred Avelino, and the other defendants (hereinafter referred to as appellants) make no complaint whatever about those convictions. They seek reversal only of the judgments of conviction of murder; and in presenting their appeals therefrom they concede that the robbery was committed by them pursuant to a conspiracy to which all were parties; that each of them participated in the robbery, and that during the perpetration thereof Ancheta was shot and fatally wounded. Furthermore, all except Dasalla (who has briefed his case separately) concede that the shot that fatally wounded Ancheta was fired by Dasalla. The evidence shows, however, and it is admitted by all parties, that Ancheta also was a member of the conspiracy, and when shot was engaged with the others in perpetrating the robbery; and such being the case, appellants contend that the trial court gave certain instructions which were inappropriate to the facts presented and prejudicial in their effect; and that therefore the giving thereof calls for reversal. We find no merit in any of the points urged in support of such contention.

The robbery was committed on a farm near Campbell in Santa Clara County. It was one of several farms operated in that county by Nishida, a Japanese, upon which he employed many Filipino laborers, among them being Fred and Marcella Avelino. Being so employed, the Avelinos knew that it was Nishida's custom to pay the wages of his men in cash about the noon hour on a certain day of the week, in a building on this particular farm near Campbell; and the Avelinos entered into a conspiracy with Dasalla, Flores, Velasco, Cabaltero and Ancheta (all being Filipinos and residents of San Francisco), to rob Nishida at that time and place; and the robbery was carried out as planned. Fred Avelino was not on the premises at the time of the robbery, but all of the others were present and actively participated therein, and all except Marcella Avelino were armed. Cabaltero waited nearby with an automobile to provide means of escape; Marcella Avelino entered the farm building with other Filipino laborers ostensibly to receive his wages, but in fact to start an altercation with Nishida, so that during

the confusion the robbery could be perpetrated. Velasco and Ancheta stood guard at the outer door, while Dasalla and Flores entered the building, and with drawn pistols held up Nishida, forcibly taking from him approximately $1200. After seizing the money Dasalla and Flores started for the outer door, but before reaching it two shots were fired from the outside, and as Dasalla made his exit through the door he shot and fatally wounded Ancheta. As a witness in his own behalf he denied having done so, but Nishida testified positively that he saw him fire the shot, and then saw Dasalla, Flores and Velasco assist Ancheta, who had fallen, to the waiting automobile in which they made their escape. From the scene of the robbery they drove to a ranch just north of Gilroy, where they left the wounded Ancheta. Later that same afternoon Cabaltero and Flores were arrested on the highway some little distance from the ranch, but Dasalla and Velasco succeeded in making their way back to San Francisco. Some time during the night Ancheta was removed to the county hospital, and about two weeks later he died from the effects of the gunshot wounds. Shortly after Ancheta's death Dasalla and Velasco were arrested in San Francisco. Part of the evidence introduced by the prosecution against Velasco consisted of a confession made by him to an officer shortly after his arrest, wherein he related the circumstances attending the shooting of Ancheta. In this regard he stated, so the officer testified, that while the robbery was being perpetrated, an automobile drove up in which were two Filipinos; that Ancheta commanded them to stay in the car, but they jumped out and started to run, whereupon Ancheta fired two shots at them; that immediately following the firing of the shots Dasalla emerged through the door of the building and exclaiming to Ancheta, "Damn you, what did you shoot for," fired a shot at Ancheta; that Ancheta fell wounded, and that they, Velasco, Dasalla and Flores picked him up and assisted him to the waiting automobile in which they fled.

The murder charge was based on section 189 of the Penal Code, and all of the essential elements thereof were pleaded in the charge. Said section declares that "All murder which is . . . committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree . . . "; and it is well settled that

one who kills another under such circumstances is guilty of murder of the first degree by force of the statute, altogether regardless of any question of intent. The killing may be wilful, deliberate and premeditated, or it may be absolutely accidental; in either case the slayer is equally guilty since the statute applies to all homicide so committed, not merely to such as might be planned as a part of the execution of the felony intended; and it is proper so to instruct the jury. (*People* v. *Milton*, 145 Cal. 169 [78 Pac. 549]; *People* v. *Boss*, 210 Cal. 245 [290 Pac. 881]; *People* v. *Reid*, 193 Cal. 491 [225 Pac. 859]; *People* v. *Green*, 217 Cal. 176 [17 Pac. (2d) 730]; 13 Cal. Jur., p. 600.) ▮ Furthermore, it is well established that if a homicide is committed by one of several confederates while engaged in perpetrating the crime of robbery in furtherance of a common purpose, the person or persons engaged with him in the perpetration of the robbery but who did not actually do the killing, are as accountable to the law as though their own hands had intentionally fired the fatal shot or given the fatal blow, and such killing is murder of the first degree. The jury has no option but to return a verdict of murder of the first degree whether the killing was intentionally or accidentally done, and it is proper so to instruct the jury. (*People* v. *Perry*, 195 Cal. 623, 638 [234 Pac. 890]; *People* v. *Boss, supra; People* v. *Raber*, 168 Cal. 316 [143 Pac. 317]; *People* v. *Lawrence*, 143 Cal. 148 [76 Pac. 893, 68 L. R. A. 193]; *People* v. *Olsen*, 80 Cal. 122 [22 Pac. 125]; *People* v. *Denman*, 179 Cal. 497 [177 Pac. 461].)

In the present case the jury was instructed in conformity with the foregoing doctrines, and there is no claim made that any of the instructions given in that behalf incorrectly set forth any of the principles of law upon which those doctrines are founded. ▮ But appellants argue that because Ancheta, the person killed, was a party to the conspiracy to rob and was fatally shot while actively participating in the perpetration of the robbery, the killing did not fall within the operation of section 189 of the Penal Code; that the prosecution therefor should have been brought under section 187 of said code, and the question of whether the killing was accidental or intentional submitted to the jury under instructions such as they proposed, but which the court refused to give, to the effect that if the jury found that Ancheta

was shot accidentally, all of them should be acquitted, notwithstanding the killing was done by one of them during the perpetration of the robbery which all conspired to commit, and in which all were actually participating at the time of the fatal shooting.

It has long since been declared to be the law of the state, however, that *any killing* by one engaged in the commission of any of the felonies enumerated in said section 189 falls within the scope of that section, and constitutes murder of the first degree. As stated in California Jurisprudence (vol. 13, p. 601), "The moment one engages in the commission of one of the specified felonies, the law fastens upon him the intent which makes *any killing* in the perpetration of such offense . . . murder of the first degree." All of the cases, and there are many of them, declare to the same effect; and while none of them involved the killing of one conspirator by another, the unqualified language employed in the decisions therein in dealing with the question of the scope of said section 189, makes it clear that said section was designed to include and that its provisions apply to any killing by one engaged in the commission of any of the specified felonies, irrespective of the status of the person killed and regardless of whether the killing is accidental or intentional. Thus in *People* v. *Bostic*, 167 Cal. 754 [141 Pac. 380], the court said: "The moment he (the defendant) entered that car with a deadly weapon in his hand, with the purpose of committing robbery, the law fixed upon him the intent which would make *any killing* in the perpetration of the robbery or in the attempt to perpetrate it, a murder of the first degree. In such cases the law does not measure the delicate scruples of the robber with reference to shooting his victim. The law holds him highly guilty if he does kill and it makes no difference whether he strikes down a man . . . presumably upon the theory that 'dead men tell no tales', or slays the brave man who resists. . . . In either case, he is a murderer subject to the finding of the jury upon trial or of the court after a plea of 'guilty', that he shall suffer death or imprisonment for life." So, also, in *People* v. *Milton, supra,* the court in speaking of the clause of said section 189 here involved, went on to say: "In this the law has said to the malefactor: If in your perpetration of or attempt to perpetrate arson, rape, robbery, burglary, or mayhem you shall take the life of a

fellow-being, intentionally or unintentionally, your crime is murder of the first degree. The killing may be wilful, deliberate, and premeditated, or it may be absolutely accidental. In either case, you are equally guilty. The elements of wilfulness, deliberation, and premeditation are not indispensable to your crime. The murder, under section 187 of the Penal Code, is established, in that the killing is unlawful, it having been perpetrated in the performance or attempt to perform one of these felonies, and the malice of the abandoned and malignant heart is shown from the very nature of the crime you are attempting to commit." The court then proceeded to review the history of said section 189 and in doing so quoted approvingly from a case from the state of New York (*Buel* v. *People,* 78 N. Y. 492 [34 Am. Rep. 555]), from which our code section was drawn, wherein it was said: "The statute was aimed against *any killing* by a criminal while committing any of the felonies enumerated. . . . " (All italics ours.) The same view is expressed in slightly different language in *People* v. *Denman, supra,* the court there saying: "We regard it as settled law in this jurisdiction that one who kills another in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is guilty of murder of the first degree by force of the provision of section 189 of the Penal Code, altogether regardless of any question whether the killing was intentional or unintentional." And in the case of *People* v. *Reid, supra,* the court summarized the law upon the subject by saying that whenever one in doing an act with the design of committing one of said felonies "takes the life of another, this is murder. The law in such a case superadds the intent to kill to the original intent to commit the felony." From the foregoing it will be seen that there is no intimation of an exception being made in the case of one coconspirator killing another. It is quite evident, therefore, that in order to remove such a case from the operation of said section 189, a modifying clause to that effect would have to be read into said section; and of course it is not within the judicial powers of the court so to do.

In support of their position appellants cite *People* v. *Ferlin,* 203 Cal. 587 [265 Pac. 230], but an examination of the factual situation therein shows it is entirely different

from the one here presented, for the reason that there the coconspirator killed himself while he alone was perpetrating the felony he conspired to commit; whereas, here the coconspirator was killed by one of his confederates while all were perpetrating the crime they conspired to commit. To be more specific, the facts of that case were these: The defendant Ferlin hired a young man named Skala to destroy an insured building by fire, and while starting the fire with gasoline (Ferlin not being present) Skala burned himself so severely he died shortly afterwards from the effects of the burns. Ferlin was charged with and found guilty of arson, murder, and destruction of an insured building. The trial court granted a new trial on the murder conviction, and in sustaining the order on appeal it was held in substance and effect that inasmuch as Skala killed himself Ferlin could not be held criminally responsible for his death. In the present case Ancheta did not kill himself and no one makes any such claim. The shot that killed him was fired, as the evidence shows, by Dasalla, a coconspirator, and the fatal shooting occurred during the perpetration of a robbery. Therefore the case falls clearly within the provisions of said section 189; and under the doctrine of the authorities above cited, not only Dasalla, who did the shooting, but all who participated with him in the perpetration of the robbery were guilty of first degree murder regardless of whether Dasalla fired the shot intentionally or accidentally. Nor is the case of *People* v. *Garippo,* 292 Ill. 293 [127 N. E. 75], cited in the Ferlin case and upon which the appellants also rely, in point for the reason that there the evidence failed to show that the shot that killed the coconspirator was fired by any of his confederates. According to the opinion, it was fired by some person unknown, and the decision exculpating the coconspirators was apparently placed on that ground. Here, as stated, there was direct evidence to the effect that Ancheta was shot by Dasalla.

The second major point presented by the appeals is made in behalf of Cabaltero, Flores, Marcella Avelino and Velasco, and is based on that portion of Velasco's confession wherein he is purported to have related the circumstances under which the shooting took place. In this connection it is contended that the statements so made by Velasco show

that Dasalla shot Ancheta deliberately and with the intention of killing him or doing him great bodily harm; that consequently Dasalla alone is accountable for the killing; and in furtherance of such theory an instruction was proposed by them which the court refused to give, to the effect that if the jury found that Ancheta was a coconspirator and was shot intentionally by his confederate, each of the coconspirators other than the one who fired the shot should be acquitted, despite the fact that the shooting occurred while all were participating in the robbery. In other words, they seek to invoke the benefit of the doctrine that if one member of a conspiracy departs from the original design as agreed upon by all members, and does an act which was not only not contemplated by those who entered into the common purpose but was not in furtherance thereof, and not the natural and probable consequence of anything connected therewith, the person guilty of such act if it was itself unlawful is alone responsible therefor. (*People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861].) Such doctrine is not available, however, to coconspirators in cases such as this, where the killing is done during the perpetration of a robbery in which they were participating. As declared in *People* v. *Boss, supra:* ''The law is also well settled that where two or more persons enter into a conspiracy to commit a robbery or burglary and one of the conspirators commits a murder in the perpetration of the crime, all of said conspirators are equally guilty with said coconspirator of murder of the first degree, and it is no defense that those who did not actually participate in the killing did not intend that life should be taken in the perpetration of the robbery, or had forbidden their associate to kill, or regretted that it had been done.'' Some of the earlier cases cited by the court in support of the foregoing legal principle are *People* v. *Raber, supra, People* v. *Milton, supra, People* v. *Lawrence, supra, People* v. *Perry, supra, People* v. *Witt,* 170 Cal. 104 [148 Pac. 928], and *People* v. *Denman, supra,* the language used by the court in the last case being: ''Nor is it of the slightest consequence that the conspirators may not have intended to bring about their victim's death. The killing, having occurred in the perpetration of robbery, was murder in the first degree.'' ▮ Here the killing was done while the conspirators were attempting to flee from the scene

of the robbery with the fruits thereof in their possession. Therefore the homicide was committed in the perpetration of the robbery. (*People* v. *Boss, supra; People* v. *Dowell*, 204 Cal. 109 [266 Pac. 807].) As said in the former case, the escape of the robbers with the loot by means of arms necessarily is as important to the execution of the robbery as gaining possession of the property.

Further contention is made on behalf of Dasalla that the evidence is legally insufficient to establish the fact that he shot Ancheta, and that therefore in any event he was entitled to an acquittal. As above pointed out, however, Nishida testified positively that he saw Dasalla fire the shot and saw Ancheta fall. Consequently, Dasalla's denial of the shooting and the circumstances relied upon by him in support of such denial at best raised but a conflict in the evidence.

With respect to the assignments of misconduct on the part of the deputy district attorney it may be said that we find nothing therein which demands a reversal. The remarks made by him during his argument to the jury concerning the percentage of crime committed in that county by Filipinos was doubtless improper. It is held, however, that where the evidence clearly supports the conviction and it appears that the jury in all probability would have rendered a verdict of guilty even in the absence of any dereliction on the part of the district attorney, a reversal is not justified. (8 Cal. Jur., p. 621; *People* v. *Simons*, 70 Cal. App. 143 [232 Pac. 772].) In the present case Dasalla, as a witness in his own behalf, admitted that he and several other Filipinos held up and robbed Nishida as charged in the information, and that during the perpetration of the robbery Ancheta was killed; and as stated, affirmative evidence was introduced showing, and all of the appellants except Dasalla concede, that Dasalla did the killing. It is quite obvious, therefore, that while the remarks complained of are subject to censure, it cannot be said that the members of the jury were unduly influenced thereby to the extent of rendering an unjust verdict or one that is lacking in evidentiary support; that being so, no ground for reversal is shown. (*People* v. *Piazza*, 84 Cal. App. 58 [257 Pac. 592].) The second assignment of misconduct relating to the cross-examination of Dasalla does not appear to be of sufficient importance to require special notice;

and the remaining points urged are merely incidental to those already decided. .

It is ordered that each judgment of conviction and each of the orders appealed from be and the same is hereby affirmed.

Tyler, P. J., and Conlan, J., *pro tem.*, concurred.