[Crim. No. 1708.   Third Appellate District.—December 28, 1939.]

THE PEOPLE, Respondent, v. WILSON DE LA ROI, Appellant.

288

Harold Simon and Stennett Sheppard for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendant was convicted of murder in the first degree, the jury fixing the punishment at life imprisonment. This is an appeal from the judgment and from an order denying a new trial.

Defendant arrived in Redding on Thursday, June 8, 1939. He made some search for work, but most of his time seems to have been spent attending shows, wrestling matches and around the pool halls. Saturday evening he met a former friend, R. L. Wertz, a man about 58 years of age, who lived by himself in a cabin about three miles northwest of Redding. They had worked together on various construction jobs, and Wertz invited defendant to have dinner with him the following day.

The next morning as defendant was walking toward the cabin of Wertz, he met Wertz coming into Redding in his car.

Defendant then accompanied him back into Redding, where Wertz purchased some supplies for the dinner, and also got a jug of wine for a friend named Danielson, who lived about a mile from the Wertz cabin. The two men drank some liquor before starting for the cabin, and defendant claimed Wertz was intoxicated, but the record shows he was able to drive his car. On the way they stopped at the Danielson cabin and delivered to him the gallon of wine, where they had two or three wine-glasses of wine. They were friendly upon arriving at the cabin of Danielson, and according to his testimony, were not intoxicated, either when the two men arrived or left his cabin.

Defendant testified he and Wertz were agreeable when they reached the Wertz cabin, and defendant went to the rear of the car to get out the groceries. The deceased then, without provocation, according to defendant, applied to him an insulting epithet, and as defendant walked toward Wertz, Wertz struck at him, which defendant evaded, and he then struck Wertz a staggering blow in the face. Without further conversation deceased walked into the house, followed by defendant. As Wertz entered the cabin, defendant thought he was going for a gun, which was standing in a corner of the cabin, and he then rushed upon him, striking him to the floor with his fists, and beat him over the head with a heavy flashlight, which caused the injury resulting in death. The foregoing is briefly the story as told by defendant.

A study of the entire transcript, however, leaves the conviction that defendant is guilty of a cold-blooded murder of an old man who was in the act of befriending him, and in failing to fix the penalty at death, the jury showed all the mercy to which defendant was entitled.

Defendant, who was 21 years of age at the time of the commission of the crime, had been married at the age of 17 to a girl two years younger. They had two children. The marriage had been annulled, and the children were in the custody of the wife's mother in Redding. Under a court order the defendant had been ordered to contribute to their support, but during the two years before his present arrest he had contributed practically nothing. He apparently spent some of his time in jail and some in S. R. A., W. P. A., and on relief jobs, and what he received for his work he spent on his own support and entertainment.

On the Sunday that defendant and deceased were to have dinner together they stopped at the cabin of Danielson, about three-quarters of a mile from the cabin of Wertz. There, according to Danielson, as we have already remarked, there was no indication of quarreling or hostility between the men. They left the Danielson cabin about noon and arrived at the Wertz cabin a few minutes later. Some time between that time and about 3:30 or 4 o'clock, when a witness met the defendant on the road a very short distance from the Wertz cabin, where he had stopped to throw the flashlight away, the assault took place. That evening Danielson went to the cabin of Wertz and found him lying in his bed, dead. The officers, upon their arrival shortly afterward, found his left trouser pocket turned inside out, his belt unbuckled and his shirt open. Two receipts of deceased were later hidden under a bush outside the cabin near where the broken flashlight was found. As indicative of the fact that defendant knew the habits of deceased and might have searched his pockets and clothing for money, is the following from the record; the district attorney and the attorney for the defendant were discussing the absence of a wallet, when the defendant interrupted and said: "A. I didn't even know that Mr. Wertz carried a wallet, because when he and I—once in awhile on payday we would cash our checks together, and he always took his money and wadded it up and put it in his pocket."

Following the assault on Wertz, the defendant took the car of deceased and fled the scene of the crime. The evening following he went to the Alameda County courthouse and reported to the night jailer he had had a fight with an old man in Shasta and that he believed the man was hurt and might need medical aid. While he was there the report came in over the police teletype informing the authorities of the finding of the dead body of Wertz, and that defendant was the last person seen with him. Defendant was then detained and afterward taken to Redding for trial.

The first point urged by appellant is that he struck deceased during a fight and in self-defense, and at most was guilty only of manslaughter, and attempted to substantiate this point by quotations from his testimony. However, it is very apparent that the jury, after hearing the evidence, and seeing him upon the stand, did not believe his testimony upon that feature of the case.

The rule is well established that this court has no power to set aside a verdict unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support it (*People* v. *Latona*, 2 Cal. (2d) 714 [43 Pac. (2d) 260]) and an examination of the evidence in this case amply and clearly supports the verdict of the jury. After conviction all intendments are in favor of the People. (*People* v. *Shannon*, 28 Cal. App. (2d) 677 [83 Pac. (2d) 302].)

We find no evidence of a sudden quarrel or any other fact justifying a verdict of manslaughter. Proof that defendant did the killing, standing alone, would constitute murder of the second degree, and here, in addition to the fact of killing, we find a receipt belonging to the deceased near the admitted instrument of death, hidden by defendant, together with the fact that the pockets of deceased had been searched, and his automobile taken and driven away, which, if the jury believed were done by the defendant, established the motive of robbery, making the killing that of murder in the first degree. In fact, rather than a reduction of the degree and the penalty, all of the evidence and circumstances would have justified the jury in rendering the death penalty.

■ Error is claimed by the admission of a letter written by defendant to his wife wherein he threatened to return and kill her and other members of her family. This letter was offered to impeach the statements of defendant that he was a loving husband and father. In fact, the cause of the assault upon deceased, according to the defendant, was because Wertz made a slighting remark about the wife and children of defendant. The court carefully instructed the jury to consider the letter solely for the purpose of determining the state of mind of the defendant as to a feeling of affection for his wife.

■ Complaint is made that the court instructed the jury that if the murder was committed in the perpetration or attempt to perpetrate mayhem it was murder of the first degree (sec. 189, Pen. Code). By section 203 of the Penal Code every person who unlawfully and maliciously slits the lip of another is guilty of mayhem. A doctor who examined the body of the deceased testified there were incised wounds on the upper lip, cutting through to the teeth, which would require a great degree of force to effect. Whenever one, in doing an act with the design of committing a felony, takes the

life of another, even accidentally, this is murder. (*People* v. *Hubbard*, 64 Cal. App. 27 [220 Pac. 315] ; *People* v. *Reid*, 192 Cal. 491 [225 Pac. 859].)

Other minor objections are urged, as for instance the reference to a deposit book which the district attorney claimed had been taken by defendant, but which was later found in the cabin, but an examination of the evidence discloses that defendant was ably represented by counsel, and that no error was committed in the admission of evidence or instructions to the jury, at least of sufficient importance to result in a miscarriage of justice. As intimated before, the defendant is fortunate that he is not on his way to the death cell, which would be entirely fitting for one guilty of such a brutal killing.

The judgment and order are affirmed.

Tuttle, J., and Thompson, J., concurred.