125 Cal.Rptr.2d 842 (2002)
102 Cal.App.4th 822
The PEOPLE, Plaintiff and Respondent,
v.
Vikram Gill BILLA, Defendant and Appellant.
No. C037717.
Court of Appeal, Third District.
October 3, 2002.
Review Granted January 22, 2003.
*844 Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Senior Assistant Attorney General, Stephen G. Herndon and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
*843 SCOTLAND, P.J.
In a plan to collect on an insurance policy, defendant Vikram Gill Billa and two accomplices set fire to defendant's truck. As they were doing so, one of the accomplices was severely burned and later died. Defendant was sentenced to state prison after a jury found him guilty of second degree murder (Pen.Code, §§ 187, 189; further section references are to the Penal Code unless otherwise specified), arson causing great bodily injury (§ 451, subd. (a)), and making a false or fraudulent insurance claim (§ 550, subd. (a)(4)).
Defendant raises numerous challenges to his convictions and sentence. His primary claim of error is that, under the rationale of People v. Ferlin (1928) 203 Cal. 587, 265 P. 230 (hereafter Ferlin) and decisions that have followed Ferlin, he cannot be held liable for murder based upon the accidental death of an accomplice to arson. As we shall explain in the published portion of this opinion, the Ferlin rule does not apply to the facts of this case. Because defendant was present and an active participant in the dangerous felony of arson that caused the accomplice's death, he is liable under the felony-murder rule. For reasons that follow, we also reject defendant's other arguments against application of the felony-murder rule.
In the unpublished parts of this opinion, we conclude that the sentence imposed for a fraudulent insurance claim must be stayed pursuant to section 654, and that defendant is entitled to one additional day of presentence conduct credit.
Accordingly, we will modify the judgment and affirm as modified.

FACTS
In April 1997, defendant bought a truck identified as a Freightliner model FLD 120 tractor. To do so, he entered into a conditional sale contract by which he borrowed the sum of $17,927.08. After he obtained insurance coverage for liability, damage to the truck, and damage to any trailer or cargo he might be hauling, defendant began working as an independent owner/operator for Divine and Company Trucking (hereafter Divine Trucking).
By August 1997, defendant was experiencing difficulties, and both he and Divine Trucking were notified that defendant's insurance was to be cancelled for nonpayment. Defendant last drove for Divine Trucking on August 22,1997; the company required its owner/operators to carry insurance with the company as an additional insured, and its dispatcher told defendant that he would not be allowed to drive for the company after August 22, at least until he corrected his insurance problem. It also appears the Department of Motor Vehicles suspended defendant's driver's license.
On August 15, 1997, defendant contacted John Kilgus of Associates Insurance Company to purchase physical damage insurance for the truck. Defendant asked for the insurance coverage to commence on August 15, 1997, with the first premium due on August 26 to coincide with his next *845 payday. Defendant did not purchase liability or cargo insurance, which Divine Trucking would require for a return to work.
On August 26, 1997, defendant drove his truck to the Yuba City home of his friend, Parmod Kumar. At some point, Kumar's brother-in-law, Manoj Bhardwaj, joined them. Later that night, the trio drove toward Sacramento with defendant and Bhardwaj in defendant's truck and Kumar following in his car. Near the City of Wheatland, defendant drove his truck onto a gravel road. He drove down the road about two-tenths of a mile and around a bend. There, the evidence establishes, defendant, Kumar, and Bhardwaj set the truck on fire.
In burning the truck, the trio used a fuel oil, either kerosene or diesel.[1] During the event, Bhardwaj somehow managed to get portions of his clothing saturated with the fuel oil. His clothing caught fire, and he was severely burned. After dousing the fire on Bhardwaj, the trio left the scene in Kumar's car.
Kumar drove defendant to his home in Elk Grove, and then Kumar and Bhardwaj returned to Kumar's home in Yuba City. When Kumar's wife, Sushma Bhardwaj, learned of her brother's injuries the next day, she contacted another brother, Davinder Bhardwaj, and he took him to the hospital. Manoj Bhardwaj died from his injuries on September 10, 1997.
On the afternoon of August 27, 1997, the day after the fire, defendant called insurance agent Kilgus in Seattle and reported that the truck was stolen. He said it was taken from a truck stop where he had parked it. Kilgus told defendant that the claim would have to be filed with the claims unit in Irving, Texas, and that defendant would have to file a police report. The next day, Kilgus referred the claim to Dora Thomas in the company claims unit. When Thomas contacted defendant, he reiterated the theft story, stating that he had left the truck parked for a few days and that it was gone when he returned. According to defendant, he reported the theft to the police but did not have a case number. Thomas referred defendant's claim to Deborah Simmons, an insurance investigator. Simmons contacted defendant, who repeated his story about the truck being stolen. Simmons then referred the matter to Drew Adams, an independent investigator with a company that specializes in truck theft investigations.
When Adams received the case, he ran the truck's vehicle identification number (VIN) through the National Crime Information Computer and learned that the truck had not been reported stolen. On September 2, 1997, Adams interviewed defendant. This time, defendant said the truck had burned; he claimed he was driving from Yuba City to Sacramento when the engine overheated and the truck caught fire. On September 5, 1997, he was interviewed by Kenneth Hale, a captain with the California Department of Forestry and Fire Protection. Defendant reiterated his story about the truck catching fire and burning.
At the conclusion of the interview, Hale placed defendant under arrest for arson. Defendant obtained his release on bail and left for Canada. Eventually, he was extradited to stand trial. Kumar left the country *846 to return to India, and remained at large at the time of defendant's trial.

DISCUSSION

I
Defendant's conviction for murder was based upon the felony-murder rule. Asserting that Bhardwaj was an accomplice, defendant argues that he cannot be held liable for murder based upon the accidental death of an accomplice to arson. (Citing Ferlin, supra, 203 Cal. 587, 265 P. 230 and decisions that have followed Ferlin.)
In Ferlin, it appeared the appellant had agreed to pay another person, Walter Skala, to burn a building. In setting the fire, Skala caused an explosion, was seriously burned, and eventually died from his injuries. (Ferlin, supra, 203 Cal. at pp. 590-594, 265 P. 230.) Ferlin held that the appellant was not liable for murder under these circumstances. The court reasoned that Skala could not be held liable for murder for accidentally killing himself, and that his accidental death was not part of the common design of the conspiracy in which the appellant and Skala engaged. (Id. at pp. 596-597, 265 P. 230.)
Defendant argues that, like the appellant in Ferlin, he cannot be held liable for murder based upon the accidental death of his accomplice. But the broad interpretation of the Ferlin decision urged by defendant is inconsistent with the established reach of the felony-murder rule. Where the commission of a dangerous felony is causally related to a death, the felony-murder rule applies regardless of whether the death was accidental. (People v. Coefield (1951) 37 Cal.2d 865, 868, 236 P.2d 570; People v. Hernandez (1985) 169 Cal.App.3d 282, 287, 215 Cal.Rptr. 166.) And a participant in a dangerous felony may be held liable under the felony-murder rule where the person killed was an accomplice. (People v. Johnson (1972) 28 Cal.App.3d 653, 658, 104 Cal.Rptr. 807; People v. Cabaltero (1939) 31 Cal.App.2d 52, 58, 87 P.2d 364.)
The distinctive factors in Ferlin were (1) the appellant was an aider and abettor before the fact and was neither present nor actively participating in the arson when it was committed; (2) the accomplice acted alone in actually perpetrating the arson; and (3) the accomplice killed only himself and not another person or persons.
These factors have been emphasized in decisions that follow Ferlin. In Woodruff v. Superior Court (1965) 237 Cal.App.2d 749, 47 Cal.Rptr. 291, the court said: "We believe the rationale of [Ferlin] to be that section 189 was inapplicable because there was no killing by the accused felon and no killing of another by one for whose conduct the accused was vicariously responsible." (Id. at p. 751, 47 Cal.Rptr. 291.) In People v. Earnest (1975) 46 Cal.App.3d 792, 120 Cal.Rptr. 485, the court stated about Ferlin: "It is not the fact that the accomplice killed himself that precludes application of the theory of vicarious responsibility, but the fact that his was the sole human agency involved in his death." (Id. at pp. 796-797, 120 Cal.Rptr. 485; see People v. Antick (1975) 15 Cal.3d 79, 87-88, 123 Cal. Rptr. 475, 539 P.2d 43 [where the defendant's liability is solely vicarious, the accomplice must cause the death of another human being for the felony-murder rule to apply], disapproved on another ground in People v. McCoy (2001) 25 Cal.4th 1111, 1123, 108 Cal.Rptr.2d 188, 24 P.3d 1210.)
These factors also have been noted in decisions which rejected application of the Ferlin rule in differing circumstances. Thus, in People v. Cabaltero, supra, 31 Cal.App.2d 52, 87 P.2d 364, the court refused to apply Ferlin where one accomplice accidentally killed another. The court found the situation in Ferlin "entirely different from the one here presented, for the reason that there the coconspirator *847 killed himself while he alone was perpetrating the felony he conspired to commit; whereas, here the coconspirator was killed by one of his confederates while all were perpetrating the crime they conspired to commit." (Id. at pp. 59-60, 87 P.2d 364; see also People v. Johnson, supra, 28 Cal. App.3d at p. 658, 104 Cal.Rptr. 807.) In People v. Superior Court (Shamis) (1997) 58 Cal.App.4th 833, 68 Cal.Rptr.2d 388, the court held that a conspirator who was not present at the commission of the acts causing the death of an accomplice could be liable for murder where other conspirators actively participated in the acts causing death. (Id. at p. 846, 68 Cal.Rptr.2d 388.)[2]
In this case, Bhardwaj did not act alone in perpetrating the arson that was the cause of his death. Defendant was present and an active participant in the crime. And his active conduct was a direct cause of Bhardwaj's death. In short, regardless of whether the death was accidental or not, defendant's act of arson killed Bhardwaj. Under the circumstances, Ferlin is inapposite, and the felony-murder rule may be applied to defendant's conduct.[3]
We also reject defendant's contention that the trial court had a duty to instruct sua sponte on the Ferlin rule. The holdings in Ferlin and its progeny addressed the sufficiency of evidence to support a charge of murder. Although decisions considering the sufficiency of evidence do not necessarily establish principles that should be the subject of jury instructions (People v. Lucero (1988) 44 Cal.3d 1006, 1021, 245 Cal.Rptr. 185, 750 P.2d 1342), we assume for purposes of argument that jury instructions on the Ferlin rule should be given in an appropriate case. (See People v. Montoya (1994) 7 Cal.4th 1027, 1047, 31 Cal.Rptr.2d 128, 874 P.2d 903 [a court's instructional duties extend to "general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case"].) However, in this case there is no evidence that the deceased acted alone in setting the fire which caused his death or that defendant was not present and an active participant in the event. Hence, the Ferlin rule has no application to the facts of this case and the trial court was under no duty to instruct on it. (People v. Perez (1992) 2 Cal.4th 1117, 1129-1130, 9 Cal. Rptr.2d 577, 831 P.2d 1159.)

II
Defendant contends that the act of setting fire to his truck causing bodily injury is not a crime which will support a conviction for second degree murder under the felony-murder rule because "the abstract elements of the offense do not show it to be inherently dangerous to human life[.]" This is so, he argues, because (1) a person "can willfully and maliciously burn property *848 in a highly controlled setting without posing a serious risk to human life," and (2) the fact the arson actually caused great bodily injury "does not make the offense inherently dangerous ... in the abstract" since "[o]ne cannot look to a result-element of an offense to determine the abstract risks posed by the proscribed element." The argument requires some explication.
Section 189 provides in pertinent part: "All murder ... committed in the perpetration of, or attempt to perpetrate, arson ... is murder of the first degree." Section 451 states in part that "[a] person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property...." In this context, the word "property" means "real property or personal property, other than a structure or forest land." (§ 450, subd. (c).) Pursuant to this unambiguous statutory language, a person who willfully and maliciously sets fire to or burns a motor vehicle is guilty of arson and is subject to the first degree felony-murder rule.
It was not always so. Prior to 1979, Penal Code provisions dealing with fire related offenses made distinctions based upon the nature of the property burned. Former section 447a dealt with such things as inhabited house cars or campers, dwelling houses, and adjoining structures. (Stats.1977, ch. 690, § 2, p. 2220.) Former section 448a dealt with certain other types of structures. (Stats.1976, ch. 1139, § 199, p. 5118.) Motor vehicles were included in former section 449a, with a lengthy list of other types of personalty. (Stats.1976, ch. 1139, § 200, p. 5119.) In said statutory scheme, the only provision specifically using the word "arson" was section 447a.
In People v. Nichols (1970) 3 Cal.3d 150, 89 Cal.Rptr. 721, 474 P.2d 673 (hereafter Nichols), the appellant set fire to his wife's car, and the resulting conflagration caused the death of two persons. (Id. at pp. 154-155, 89 Cal.Rptr. 721, 474 P.2d 673.) The Supreme Court considered whether the crime described in former section 449a would support a first degree murder conviction under section 189. The court concluded "the Legislature did not intend the word `arson' as used in ... section 189 to apply to the burning of those items enumerated in [former] section 449a." (Id. at p. 162, 89 Cal.Rptr. 721, 474 P.2d 673.)[4] However, the court determined that "the wilful and malicious burning of a motor vehicle calls into play the second degree felony-murder rule" because "the burning of a motor vehicle, which usually contains gasoline and which is usually found in close proximity to people, is inherently dangerous to human life." (Id. at p. 163, 89 Cal.Rptr. 721, 474 P.2d 673.)
Thereafter, in 1979, the Legislature revised the Penal Code provisions relating to unlawful burnings. Now all willful and malicious burnings are expressly defined to be arson. Nonetheless, whether in reliance on Nichols, supra, 3 Cal.3d 150, 89 Cal.Rptr. 721, 474 P.2d 673, or out of a belief that a charge of first degree murder would be unduly harsh under the circumstances, the prosecutor charged defendant with second degree murder.
Defendant argues the reasoning of Nichols has been undermined by the holding in People v. Henderson (1977) 19 Cal.3d 86, 137 Cal.Rptr. 1, 560 P.2d 1180 (hereafter Henderson), and no longer supports the conclusion that the second degree felony-murder rule may be predicated *849 upon the willful and malicious burning of a motor vehicle.
In Henderson, supra, 19 Cal.3d 86, 137 Cal.Rptr. 1, 560 P.2d 1180, the Supreme Court held that felony false imprisonment is not an inherently dangerous felony that will support application of the felony-murder rule. (Id. at p. 90, 137 Cal.Rptr. 1, 560 P.2d 1180.) The court noted that the determination of whether a felony is inherently dangerous depends upon the elements of the crime in the abstract rather than the particular facts of the case in which the issue is presented. (Id. at p. 93, 137 Cal.Rptr. 1, 560 P.2d 1180.) Because the governing statute made false imprisonment a felony when it was committed by violence, menace, fraud or deceit, the court concluded that false imprisonment can be committed in ways not inherently dangerous to human life. (Id. at pp. 93-94, 137 Cal.Rptr. 1, 560 P.2d 1180.) The court rejected the People's argument, based upon the reasoning of Nichols, that false imprisonment should support a felony-murder charge when it is committed by violence or menace. (Id. at pp. 95-96, 137 Cal.Rptr. 1, 560 P.2d 1180.) As the court explained, the argument lacked merit because the "Legislature has not drawn any relevant distinctions between violence, menace, fraud, or deceit" with respect to false imprisonment, i.e., the Legislature has not distinguished types of false imprisonment in that manner. (Id. at p. 95, 137 Cal.Rptr. 1, 560 P.2d 1180.) The court went on to say "any suggestion in Nichols inconsistent with the views expressed in [Henderson] should not be followed." (Henderson, supra, 19 Cal.3d at p. 96, 137 Cal.Rptr. 1, 560 P.2d 1180.)
Consequently, defendant claims not all willful and malicious burnings can be considered inherently dangerous and, therefore, viewing the arson statute in the abstract and in its entirety, no violations of the statute can support his conviction for second degree murder pursuant to the felony-murder rule. We reject the argument for several reasons.
First, in determining whether a felony is inherently dangerous for purposes of the felony-murder rule, we may not deem controlling the possibility that in some particular instance a perpetrator of the crime may be able to exercise care to avoid or reduce the risk to human life. The ostensible purpose of the felony-murder rule is to deter those engaged in crime from killing negligently or accidentally. (Henderson, supra, 19 Cal.3d at p. 93, 137 Cal.Rptr. 1, 560 P.2d 1180.) Hence, the felony-murder rule presupposes the perpetrator of a crime can exercise care to avoid the loss of life. Accordingly, we analyze the crime to determine whether it creates an inherent risk and not an inevitable result.
Second, our conclusion must give effect to the intent of the Legislature to the extent such legislative intent can be determined. (People v. Patterson (1989) 49 Cal.3d 615, 625, 262 Cal.Rptr. 195, 778 P.2d 549; Henderson, supra, 19 Cal.3d at p. 95, 137 Cal.Rptr. 1, 560 P.2d 1180; Nichols, supra, 3 Cal.3d at p. 162, 89 Cal. Rptr. 721, 474 P.2d 673.) As we have noted, in 1979, the Legislature substantially revised the Penal Code provisions dealing with unlawful fires. The Legislature now regards all willful and malicious burnings as sufficiently dangerous to warrant the appellation "arson" and the application of the felony-murder rule. (§§ 189, 451.) That is compelling evidence of the Legislature's view of the matter.
Third, fire is dangerous. It is unpredictable, easily gets out of control, and is indiscriminate as to the persons, places, and things it attacks. Fire can, and often does, overtake and overcome the unaware; and it precipitates what can be dangerous suppression and rescue efforts by government *850 workers and members of the public. In tort law, certain activities and articles, while having legitimate uses, are so inherently dangerous that "the standard of care required of the reasonable person when dealing with such dangerous articles is so great that a slight deviation therefrom will constitute negligence." (Warner v. Santa Catalina Island Co. (1955) 44 Cal.2d 310, 317, 282 P.2d 12.) Fire is such an article. (Ibid.)
The legislative experience indicates the dangers inherent in fire. A reference to LARMAC reflects a multitude of statutory provisions scattered throughout California's codes dealing with fire, fire prevention, and fire safety. (Parker's 2002 LARMAC Consolidated Index to the Constitution and Laws of California, pp. 466-467.) The judicial experience is similar. The decisional authorities of this state, and of others, are replete with examples of judicial efforts to deal with the aftermath of the spread of fire. (See, e.g., Annot, Liability for Spread of Fire Intentionally Set for Legitimate Purpose (1994) 25 A.L.R. 5th 391.)
The Legislature has determined that all willfully and maliciously set fires are inherently dangerous. In view of the legislative experience, the judicial experience, and common sense, we cannot gainsay that determination. Hence, we reject defendant's assertion that willful and malicious burning of property, in this case a motor vehicle, will not support application of the felony-murder rule.

III
Defendant contends the so-called merger doctrine precludes application of the felony-murder rule in the circumstances of this case. We disagree.
In People v. Ireland (1969) 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580, the Supreme Court held that application of the felony-murder rule cannot be based upon a felony which is an integral part of the homicide. (Id. at p. 539, 75 Cal.Rptr. 188, 450 P.2d 580.) That case involved aggravated assault, and the court concluded it would be inappropriate bootstrapping to uphold a conviction of murder based upon assault without consideration of malice aforethought. In People v. Wilson (1969) 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22, the court applied this merger rule to a charge of burglary felony murder where the only reason the entry was felonious was because the defendant entered with the intent to assault the victim. (Id. at p. 440, 82 Cal.Rptr. 494, 462 P.2d 22.)
In this case, defendant's crime caused great bodily injury, and he was convicted under section 451, subdivision (a), which specifies the punishment for arson causing great bodily injury. Defendant argues that great bodily injury is an integral part of homicide and, thus, the merger rule precludes application of the felony-murder rule.
The argument pushes the merger rule beyond its appropriate scope. A similar argument was made and rejected in People v. Burton (1971) 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793 (hereafter Burton), which limited the decision in People v. Wilson, supra, 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 to its specific facts. (Burton, supra, 6 Cal.3d at p. 388, 99 Cal.Rptr. 1, 491 P.2d 793.) The appellant in Burton contended that armed robbery necessarily includes assault with a firearm and, therefore, it cannot support application of the felony-murder rule. The Supreme Court drew a distinction between (1) situations in which the purpose of the criminal conduct was the assault that resulted in death and (2) conduct with an independent felonious purpose which happens to be accomplished through an assault that results in death. (Id. at p. 387, 99 Cal.Rptr. 1, 491 P.2d 793.) *851 The inquiry must focus on the purpose of the criminal conduct. (Ibid.)
In this light, the merger rule is limited in application to situations in which the purpose of inflicting violent injury is the single purpose or single course of conduct in which the perpetrator engages. (Burton, supra, 6 Cal.3d at p. 388, 99 Cal.Rptr. 1, 491 P.2d 793.)
Here, defendant's purpose in burning his truck was to avoid his obligations under the conditional sale contract and to secure for himself any residual insurance benefits. The offense did not require, and there was no evidentiary suggestion, that defendant burned the truck for the single purpose of inflicting injury on the victim. Consequently, the merger rule is inapplicable.

IV
Arson is a general intent crime. (People v. Atkins (2001) 25 Cal.4th 76, 79, 104 Cal.Rptr.2d 738, 18 P.3d 660.) However, application of the felony-murder rule requires that the accused have the specific intent to commit the underlying felony, regardless of whether it is otherwise a general intent crime. (People v. Berryman (1993) 6 Cal.4th 1048, 1085, 25 Cal.Rptr.2d 867, 864 P.2d 40, overruled on another ground in People v. Hill (1998) 17 Cal.4th 800, 823, fn. 1, 72 Cal.Rptr.2d 656, 952 P.2d 673; People v. Hernandez (1988) 47 Cal.3d 315, 346, 253 Cal.Rptr. 199, 763 P.2d 1289.)
Defendant was found guilty of arson that caused great bodily injury under section 451, subdivision (a). Thus, he argues that, for application of the felony-murder rule, it must be shown he had the specific intent to inflict great bodily injury and, since such proof is lacking, his murder conviction cannot stand. For reasons that follow, we reject the argument.
The underlying felony supporting the murder conviction was arson. The fact the arson caused great bodily injury was a factor that served to increase the potential prison term for the offense, but it was not an essential element of the crime of arson. Where arson is the underlying felony for purposes of the felony-murder rule, the specific intent which must be shown is the intent to set the fire that resulted in the victim's death. (Nichols, supra, 3 Cal.3d at pp. 164-165, 89 Cal.Rptr. 721, 474 P.2d 673.) Defendant's specific intent to set the fire that resulted in Manoj Bhardwaj's death is amply established by the evidence.
For this same reason, we reject defendant's contention that the court erred in instructing the jury that the felony-murder rule would apply whether the death was intentional, unintentional, or accidental. (See CALJIC No. 8.32.) The decision in People v. Jones (2000) 82 Cal.App.4th 663, 98 Cal.Rptr.2d 724, upon which defendant relies, is inapposite. There, the court considered whether a violation of Vehicle Code section 2800.3 (evasion of a police officer causing death or serious bodily injury) will support application of the felony-murder rule. Evasion of a police officer is not a felony unless death or serious bodily injury results. (Veh.Code, §§ 2800.1-2800.3.) Accordingly, unless a person who evades a police officer does so with the specific intent to cause death or serious bodily injury, the person does not have the specific intent to commit a felony and the felony-murder rule cannot apply. In contrast, the underlying felony here, arson, is a dangerous felony regardless of whether the enhancing factor of great bodily injury occurs or is intended; it is enough that defendant intended to set the fire that caused the victim's death. As we have noted, substantial evidence supports the jury's finding that defendant intended to set the fire that resulted in death.

*852 V
In defendant's view, arson that causes great bodily injury within the meaning of section 451, subdivision (a), should be construed in a manner consistent with the Ferlin rule. He argues the bodily injury referred to must be bodily injury to another which, in defendant's view, does not occur when an accomplice injures himself.
We need not consider whether the Ferlin rule should apply to section 451, subdivision (a), in appropriate circumstances. As explained in part I, ante, that rule and similar limitations on criminal responsibility apply only where the accomplice is the sole active cause of the accomplice's injury or death. Where the defendant and/or other participants in the criminal endeavor actively participate in the events that cause injury or death, all of the participants in the criminal endeavor may be held liable for an injury or death regardless of whether the injured person was an accomplice whose conduct contributed to his own injury or death. (See People v. Superior Court (Shamis), supra, 58 Cal.App.4th at p. 846, 68 Cal. Rptr.2d 388.) This was the circumstance here.

VI-XII[**]

DISPOSITION
The judgment is modified to stay, pursuant to section 654, the service of sentence imposed on count three, insurance fraud in violation of section 550, subdivision (a)(4), and to award defendant a total of 476 days of presentence conduct credit (414 days of actual custody credit and 62 days of good conduct credit). As modified, the judgment is affirmed.
The trial court is directed to amend the abstract of judgment to reflect these modifications and to state that the indeterminate term of 15 years to life is imposed on count one only. The court is further directed to forward to the Department of Corrections a certified copy of the amended abstract of judgment.
We concur: SIMS and MORRISON, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts VI through XII.
[1] A Department of Justice criminalist who tested samples obtained during the investigation testified that the tests could not distinguish between kerosene and diesel. She explained that kerosene is lighter than diesel and will evaporate more readily, but that it is the lighter elements of kerosene that evaporate. Thus, the residue left when kerosene evaporates resembles diesel too closely for distinction. While she could not determine whether the substance was kerosene or diesel, she testified that it definitely was not gasoline.
[2] Defendant's citation and reliance upon a passage from People v. Slaughter (1984) 35 Cal.3d 629, at page 655, 200 Cal.Rptr. 448, 677 P.2d 854, is misplaced because it comes from a two justice dissent that was rejected by the majority of the Court.
[3] We reject the argument in defendant's reply brief based on People v. Gunnerson (1977) 74 Cal.App.3d 370, at page 378, 141 Cal.Rptr. 488, that there is no "killing" when an accomplice dies accidentally. The felony-murder rule applies so long as a death is a direct causal result of the commission of a dangerous felony. (People v. Hernandez, supra, 169 Cal.App.3d 282, 287, 215 Cal.Rptr. 166.) While there is no killing "of another" when an accomplice acts alone in causing his own death, there is a killing upon which murder liability may attach when the defendant or other accomplices actively participate in the events causing death. (People v. Superior Court (Shamis), supra, 58 Cal.App.4th at p. 846, 68 Cal.Rptr.2d 388; People v. Cabaltero, supra, 31 Cal.App.2d at pp. 59-60, 87 P.2d 364.)
[4] Acknowledging that its conclusion was "not free from doubt," the court resolved the doubt in favor of appellant. (Nichols, supra, 3 Cal.3d at p. 162, 89 Cal.Rptr. 721, 474 P.2d 673.)
[**] See footnote *, ante.